IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02335-PAB-MDB

DELBERT ELMER SGAGGIO, JR., and
JEROME FREEMAN,[1]

     Plaintiffs,

v.

STEVEN CARLOS, El Paso County Investigator, in professional and personal capacity,
T. ELGAS, El Paso County Security Officer, in professional and personal capacity,
J. RANDALL, El Paso County Security Officer, in professional and personal capacity,
DALY, El Paso County Investigator, in professional and personal capacity, and
BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY,

     Defendants.

---

**ORDER**

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 48]. The recommendation addresses Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 31]. Mr. Sgaggio and defendants have filed objections, Docket

---

[1] Mr. Freeman has not signed the amended complaint or the objection to the magistrate judge's recommendation. *See* Docket No. 22 at 23; Docket No. 49 at 14. Rule 11(a) requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Mr. Freeman is unrepresented and is proceeding *pro se*. Defendants state that they emailed Mr. Freeman regarding this deficiency, but he did not respond. Docket No. 53 at 3. Because Mr. Freeman did not sign the amended complaint or the objection to the magistrate judge's recommendation, the Court finds Mr. Freeman does not object to the recommendation. The Court will order Mr. Freeman to show cause as to why this case should not be dismissed against him.

Nos. 49, 52, and responses.  Docket Nos. 53, 54.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

The facts are set forth in the magistrate judge's recommendation, Docket No. 48 at 3-5, and the Court adopts them for purposes of ruling on the objection.  To the extent that the parties dispute how the magistrate judge construed certain facts, the Court considers and resolves those arguments below.

On August 23, 2024, Mr. Sgaggio and Mr. Freeman filed this case.[2]  Docket No. 1.  On December 26, 2024, Mr. Sgaggio filed an amended complaint.  Docket No. 22.  As relevant here, the amended complaint brings claims under 42 U.S.C. § 1983 for violation of the First Amendment, for First Amendment retaliation, and for violations of the Fourth, Fifth, and Fourteenth Amendments.  *Id.* at 14-22, ¶¶ 50-108.  On March 12, 2025, defendants filed a motion to dismiss, arguing that they are entitled to qualified immunity.  Docket No. 31.  On February 23, 2026, Magistrate Judge Maritza Dominguez Braswell issued a recommendation to grant the motion to dismiss as to all claims except the First Amendment retaliation claim.  Docket No. 48.  Mr. Sgaggio and defendants filed timely objections.[3]  Docket Nos. 49, 52.  Mr. Sgaggio and defendants filed responses.  Docket Nos. 53, 54.

---

[2] While Mr. Freeman did not sign the amended complaint, he did sign the original complaint.  *See* Docket No. 1 at 17.

[3] Defendants filed a timely objection on March 9, 2026; however, the Court struck the filing for failure to adhere to the Court's practice standards.  *See* Docket Nos. 50, 51.  The Court ordered defendants to refile an objection which complies with the Court's practice standards on or before March 11, 2026.  Docket No. 51.  Defendants did so. Docket No. 52.

## II. LEGAL STANDARD

### A. Objections to the Magistrate Judge Recommendation

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*").  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id*.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court therefore reviews the non-objected to portions of a recommendation to confirm there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).  Because plaintiff is proceeding *pro se*, the Court will construe his objections and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671

3

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

4

## III. ANALYSIS

### A. <u>Defendants' Objections</u>

The magistrate judge recommends denying the motion to dismiss as to plaintiffs' First Amendment retaliation claim.[4]  Docket No. 48 at 7-14.  The recommendation notes that, "when a defendant raises the defense of qualified immunity, a 'plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory rights, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.'"  *Id.* at 7 (quoting *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)).  The recommendation finds that defendants' actions constituted retaliation against plaintiffs for trying to serve a lawsuit and for criticizing a government policy, in contravention of the First Amendment.  *Id.* at 8-12.  Moreover, the recommendation finds that plaintiffs' rights are clearly established, and that the defendants are accordingly not entitled to qualified immunity.  *Id.* at 13-14.

"To state a claim for First Amendment retaliation, a plaintiff must allege (1) that it was engaged in constitutionally protected activity, (2) the defendant's actions caused it to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to [its] protected conduct."  *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citation omitted).  Defendants object to the recommendation's finding that Mr. Sgaggio plausibly alleges that he was engaging in protected activity when attempting to serve a lawsuit and when criticizing a government policy in a nonpublic forum.  Docket No. 52 at 6-13.  Defendants also object

---

[4] The recommendation analyzes the motion to dismiss as applied to both Mr. Sgaggio and Mr. Freeman.  *See generally* Docket No. 48.

to the recommendation's finding that Mr. Sgaggio plausibly alleges that defendants' actions were substantially motivated by Mr. Sgaggio's protected activity. *Id.* at 2-6. Thus, defendants argue that they did not violate any First Amendment right and are therefore entitled to qualified immunity. *Id.* at 13-14.

The recommendation finds that plaintiffs' attempt to serve a lawsuit was protected activity under the First Amendment. Docket No. 48 at 9. Citing *Van Deelen v Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007), the recommendation notes that the First Amendment protects a citizen's right to "petition the government through litigation" and that "a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress." *Id.*

Defendants object to the recommendation's application of *Van Deelen*, arguing that *Van Deelen* does not give a plaintiff the right to serve a lawsuit "in any manner, at any time or in any[ ] place they choose." Docket No. 52 at 8. *Van Deelen's* statement that "a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress" was made in the context of there being a right to file a lawsuit even if the content of the lawsuit does not involve issues of public concerns. *Van Deelen*, 497 F.3d at 1156. Thus, *Van Deelen* holds that the First Amendment embraces "[t]he minor and questionable, along with the mighty and consequential." *Id. Van Deelen* does not analyze whether citizens have an absolute right to serve a lawsuit in any location.

The recommendation finds, and no party disputes, that the government building where Mr. Sgaggio and Mr. Freeman attempted to serve the lawsuit is a nonpublic forum. Docket No. 48 at 15. The government is allowed to control access to nonpublic

6

forums, so long as restrictions on access "are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citation omitted).

Here, the amended complaint alleges that Mr. Sgaggio went to the government building along with Mr. Freeman to serve the police liaison after the police liaison informed Mr. Sgaggio that she would accept service. Docket No. 22 at 3-4, ¶¶ 8-9. Mr. Sgaggio accompanied Mr. Freeman "to document the service" and to "navigate the Government unwillingness to accept service." [5] *Id.* at 4, ¶ 12. The parties do not address whether the First Amendment protects a person's right to accompany a process server who is serving that person's federal lawsuit. However, assuming Mr. Sgaggio does have such a right, the Court finds that defendants did not chill his ability to exercise that right.

The amended complaint alleges that, after Mr. Sgaggio asked about the sign-in requirement, Mr. Sgaggio and Mr. Freeman were not allowed to access the police liaison's office. *Id.* at 6, ¶ 20. After defendants Daly and Steven Carlos arrived, they continued to block Mr. Sgaggio's and Mr. Freeman's access. *Id.*, ¶ 23. Mr. Sgaggio asked to speak to their supervisor. *Id.* at 8, ¶ 30. In response, defendant Elgas, a security officer, called two El Paso County sheriff's deputies and two more El Paso County security guards. *Id.* at 8, ¶ 31. Thus, the only chilling of Mr. Sgaggio's First Amendment rights that is alleged in the amended complaint was these defendants

---

[5] As a party to the lawsuit he intended to serve, Docket No. 22 at 4, ¶ 11, Mr. Sgaggio could not serve the summons and complaint himself. *See* Fed. R. Civ. P. 4(c)(2) (stating that a summons and complaint cannot be served by a party to the lawsuit).

continuing to block Mr. Sgaggio's and Mr. Freeman's access to the police liaison's office.

The Court finds that blocking access to the police liaison's office would not chill a person of ordinary firmness from the First Amendment right to serve process.  Mr. Sgaggio informed defendants that he and Mr. Freeman were attempting to serve the police liaison.  *Id.* at 6-7, ¶ 24a.  Pursuant to Fed. R. Civ. P. 4(e)(2), individuals can be served with process by delivering a copy of the summons and complaint to the individual personally, leaving copies at the individual's dwelling with someone of suitable age and discretion who resides there, or by delivering copies to an agent authorized by appointment of law to receive service of process.  Fed. R. Civ. P. 4(e)(2)(A)-(C).  Nothing in Rule 4 indicates that individuals can be served by leaving a copy of the summons and complaint in their office.  Thus, the allegations of the amended complaint do not show any chilling of Mr. Sgaggio's First Amendment right to serve his lawsuit because he could only serve it on the police liaison, not the liaison's office.

While Mr. Sgaggio was at the security checkpoint, the police liaison showed up, coming over from the courthouse.[6]  Docket No. 22 at 8, ¶ 32.  Thus, the amended complaint itself indicates that the police liaison was not in her office.  The police liaison accepted service from Mr. Freeman.  *Id.*  The Court finds that preventing entry into an office when the person to be served is absent would not chill individuals of ordinary

---

[6] Given the timing of her arrival, it is reasonable to presume that defendants called the police liaison to come and talk to Mr. Sgaggio and Mr. Freeman.

firmness from serving process.[7]  This is particularly true when the office is in a

nonpublic forum.  Thus, Mr. Sgaggio shows no chilling of his constitutional right to serve

his lawsuit, and, as a result, the amended complaint's First Amendment retaliation claim

involving service of process fails as to the second element.

The next issue is whether defendants chilled Mr. Sgaggio from exercising his

First Amendment right to criticize the policy requiring visitors to sign a logbook.  The

amended complaint alleges that, after Mr. Sgaggio questioned the sign-in policy,

defendant Elgas called investigators to come and answer his questions.  Docket No. 22

at 5, ¶ 19.  As noted earlier, defendants Daly and Carlos, once they arrived, blocked Mr.

Sgaggio's access to the police liaison's office.  *Id.* at 6, ¶ 23.  The amended complaint

does not allege whether Mr. Sgaggio complained to these persons about the sign-in

policy, but does allege that he complained about his lack of access to the police

liaison's office.  *Id.* at 6-8, ¶¶ 23-30.  The amended complaint does not allege that Mr.

Sgaggio was restricted from complaining about the sign-in policy.[8]  *See generally id.*

Moreover, after Mr. Freeman served the police liaison, Mr. Sgaggio continued to stay in

the building.  *Id.* at 8, ¶ 32.  There is no allegation that, after service of the complaint,

---

[7] Even if the police liaison was in her office, "[t]he First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message."  *Cornelius*, 473 U.S. at 809 (citation omitted).  Thus, it would not implicate the First Amendment if Mr. Sgaggio was prevented from the most efficient method of serving the police liaison because Mr. Sgaggio could have had Mr. Freeman serve the police liaison in another manner, such as by waiting until she was no longer in a nonpublic forum or by waiting until the police liaison met him by the security checkpoint.

[8] Mr. Sgaggio alleges that defendants attempted to intimidate him by calling sheriff's deputies and security guards.  Docket No. 22 at 8, ¶ 31.  However, these additional personnel were only called after plaintiff asked to speak to defendant Carlos's supervisor and after plaintiff continued demanding access to a secure office, *id.*, ¶¶ 30-31, which did not involve his complaints about the sign-in policy.

Mr. Sgaggio continued to criticize the sign-in policy or that defendants did anything to prevent him from doing so. Like the amended complaint's First Amendment retaliation claim based on service of process, this claims fails as to the second element. Accordingly, the Court will sustain the defendants' objection and will dismiss the retaliation claim.

### B. Mr. Sgaggio's Objections

Mr. Sgaggio objects to the recommendation's finding that claims two[9] and five should be dismissed. *See generally* Docket No. 49. Mr. Sgaggio does not object to any other portions of the recommendation. *Id.*

#### 1. Claim Two

Claim Two alleges that Mr. Sgaggio's First Amendment right to speak anonymously was violated through the requirement that citizens entering the government building sign a logbook identifying themselves.[10] Docket No. 22 at 16-18, ¶¶ 61-71. The recommendation recognizes that the right to engage in protected speech anonymously is protected by the First Amendment. Docket No. 48 at 14. However, the

---

[9] The recommendation addresses claims two and seven together; however, Mr. Sgaggio only objects to the recommendation's finding as to claim two. *See* Docket No 48 at 14-17; *see generally* Docket No. 49.

[10] Claim Two also alleges violations of the Fifth and Fourteenth Amendment arising from the logbook policy. Docket No. 22 at 16. The recommendation notes that "the claim seems grounded in the First Amendment, and the Court cannot make out what application the Fifth and Fourteenth Amendment purportedly have on this claim." Docket No. 48 at 4 n.4. Thus, the recommendation solely focuses on the First Amendment when analyzing this claim. *See id.* at 14-17. Mr. Sgaggio does not object on the ground that the recommendation does not address the Fifth and Fourteenth Amendments when analyzing Claim Two. Moreover, Claim Two alleges a First Amendment violation based on Mr. Sgaggio being asked for his ID, Docket No. 22 at 17, ¶ 64, but Mr. Sgaggio does not object to the recommendation's finding on this allegation as to Claim Two. Docket No. 49 at 3-7. Mr. Sgaggio does object on the ground that he was asked for his ID when objecting to the recommendation's finding as to Claim Five. *Id.* at 8.

recommendation determines that the government building in this case is a nonpublic

forum, and the requirement that visitors identify themselves in a logbook upon entry is

reasonable and viewpoint neutral.  *Id.* at 15-16.  Thus, the recommendation suggests

dismissing Claim Two.  *Id.* at 16.

Mr. Sgaggio objects on the grounds that the logbook policy is not reasonable and

not uniformly applied, that he has a First Amendment right to anonymity, and that the

recommendation improperly "makes argument that are not contained in the four corners

of the complaint."[11]  Docket No. 49 at 3-7.

### a.  Reasonable and Viewpoint Neutral

The Court finds the amended complaint does not plausibly allege that the

logbook policy is anything other than reasonable and viewpoint neutral.  The amended

complaint alleges that, upon entering the government building, Mr. Sgaggio and Mr.

Freeman "went through the metal detector and then signed in to a red book," and that a

security guard was at the checkpoint.  Docket No. 22 at 5, ¶ 14.  Thus, the allegations of

the amended complaint are reasonably interpreted to state that, as part of the security

process when entering the building, visitors are required to sign the logbook.  The

amended complaint alleges no facts indicating another purpose for the logbook policy.

The recommendation finds that "the sign-in requirement is a reasonable security

protocol in a government office building where security measures help avoid disruption

---

[11] Mr. Sgaggio also objects to the recommendation's finding on Claim Two that restrictions on serving a federal lawsuit require a heightened level of scrutiny by the Court.  Docket No. 49 at 4.  It is unclear what serving a federal lawsuit has to do with plaintiffs' second claim, which alleges a First Amendment violation of the right to anonymity based on the logbook policy.  Furthermore, as explained above, restrictions on serving a lawsuit in a nonpublic forum are not subject to "heightened scrutiny," but instead pass constitutional muster if they are reasonable and viewpoint neutral.  Thus, the Court will overrule this objection.

and ensure public safety."  Docket No. 48 at 16.  The Court agrees, and finds no

plausible explanation in the amended complaint for why the logbook policy is

unreasonable.  In fact, the Ninth Circuit has held that there is "not . . . a constitutional

right to enter [a] federal building anonymously."  *Foti v. McHugh*, 247 F. App'x 899, 901

(9th Cir. 2007) (unpublished) (citing *Gilmore v. Gonzales*, 435 F.3d 1125, 1136-39 (9th

Cir. 2006); *INS v. Delgado*, 466 U.S. 210, 216 (1984)).  Thus, the Court finds that Mr.

Sgaggio had no right to enter a non-public government building anonymously, and

therefore finds that a restriction on his ability to do was not unreasonable.  *Cf. Grays v.*

*Navient Sols., LLC*, No. 20-cv-0452-WJM-SKC, 2022 WL 1183726, at *3 (D. Colo. Apr.

21, 2022), *report and recommendation adopted*, 2023 WL 2826287 (D. Colo. Mar. 10,

2023) ("There is simply no precedent to support Plaintiff's position that the First

Amendment prohibits a government officer from requiring a person entering a

government building to answer basic questions about her business there.").

Moreover, Mr. Sgaggio argues that the logbook policy is not uniformly applied.

Docket No.49 at 4.  The Court construes this as an argument that the policy is not

viewpoint neutral.  The amended complaint alleges that Mr. Sgaggio signed the book

immediately upon entering the building, and before disclosing why he was in the

building.  Docket No. 22 at 5-6, ¶¶ 14, 24.  Thus, it is implausible that Mr. Sgaggio was

made to sign the logbook policy due to his viewpoints.  The amended complaint does

allege that two other individuals did not have to sign the logbook or go through the metal

detector, *id.* at 12, ¶ 42, but, as the recommendation notes, "Plaintiffs do not allege that

these individuals were visitors to the building like Plaintiffs were."  Docket No. 48 at 16

n.6.  Thus, the amended complaint fails to plausibly allege that Mr. Sgaggio had to sign the logbook because of his viewpoint.  Accordingly, the Court will overrule this objection.

### b.  Right to Anonymity

Mr. Sgaggio objects to the recommendation on the basis that he has a right to anonymity when serving a lawsuit.  Docket No. 49 at 6.  This misconstrues the recommendation.  The recommendation states that Mr. Sgaggio has the right to engage in anonymous speech.  Docket No. 48 at 14-15.  The magistrate judge only recommends dismissal of Claim Two because Mr. Sgaggio was attempting to exercise that right in a nonpublic forum, and because the restriction on anonymity was reasonable and viewpoint neutral.  *Id.* at 15-16.

Moreover, the amended complaint fails to allege that Mr. Sgaggio's right to serve a lawsuit anonymously was violated.  For one, Mr. Sgaggio did not serve the lawsuit, Mr. Freeman did.  Docket No. 22 at 8, ¶ 32.  Furthermore, there is no allegation that the police liaison required signatures or ID when she accepted service from Mr. Freeman. *Id.*  In fact, Mr. Sgaggio asserts that he has "served lawsuits and complaints, to the Police liaison in the past and never had any problems," suggesting that the police liaison has not required ID in the past either.  *Id.* at 4, ¶ 10.  Thus, the Court will overrule this objection.

### c.  Improper Standard

Finally, Mr. Sgaggio argues that the "[m]agistrate makes arguments that are not contained in the four corners of the complaint, these arguments cannot be justification for dismissal of Claim 2."  Docket No. 49 at 7.  For support, Mr. Sgaggio points to the portion of the recommendation which states that "the sign-in requirement is a reasonable security protocol in a government office building where security measures

13

help avoid disruption and ensure public safety." *Id.* (quoting Docket No. 48 at 16). This is not an example of the recommendation making an "argument." Rather, the recommendation is applying the allegations in the amended complaint relating to the logbook policy to the applicable law for determining whether there is a First Amendment violation in a nonpublic forum. In doing so, the recommendation is not considering facts outside the amended complaint, but is instead analyzing the sufficiency of the amended complaint's allegations to survive a motion to dismiss under Rule 12(b)(6). Thus, the Court will overrule this objection.

### 2. *Claim Five*

Claim Five alleges that defendants violated the Fourth Amendment through forcing Mr. Sgaggio to identify himself. Docket No. 22 at 20, ¶¶ 88-94. The recommendation finds that, as an initial matter, requiring self-identification for visitors entering a government building may not implicate the Fourth Amendment. Docket No. 48 at 19. The recommendation further states that, even if the Fourth Amendment is implicated, the request for identification does not constitute a violation because it is an "administrative" or "special needs" search. *Id.* Mr. Sgaggio objects on the grounds that the recommendation did not address his ID being taken on November 15, 2023, that the recommendation misapplied the administrative search and special needs exception, and that the recommendation improperly resolved factual disputes against Mr. Sgaggio. Docket No. 49 at 7-14.

The Fourth Amendment provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary

cooperation." *United States v. Johnson*, 364 F.3d 1185, 1188 (10th Cir. 2004) (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). Thus, "[p]olice officers may approach citizens, ask them questions and ask to see identification without implicating the Fourth Amendment's prohibition against unreasonable searches and seizures." *Id.* at 1188-89 (citation omitted).

Here, the amended complaint alleges that, upon entering the government building, Mr. Sgaggio and Mr. Freeman "went through the metal detector and then signed in to a red book." Docket No. 22 at 5, ¶ 14. While Mr. Sgaggio proceeded to ask if he had to sign the book, this was after he had already signed in. *Id.*, ¶ 15. Mr. Sgaggio's voluntary cooperation with government officials does not implicate the Fourth Amendment. *See United States v. Reeves*, 524 F.3d 1161, 1166 (2008) ("Consensual encounters do not implicate the Fourth Amendment."). Mr. Sgaggio's allegation that he was "forced" to identify is conclusory, and all allegations related to the logbook indicate that it was voluntarily signed. *See* Docket No. 22 at 20, ¶ 91. Mr. Sgaggio acknowledges that he was never detained. *Id.*, ¶ 90. Thus, the Fourth Amendment is not implicated by Mr. Sgaggio signing the logbook. With this in mind, the Court will analyze Mr. Sgaggio's objections.

### a. Allegations Regarding Mr. Sgaggio's ID

Mr. Sgaggio objects on the ground that the recommendation did not consider the November 15, 2023 seizure of Mr. Sgaggio's ID when analyzing Claim Five. Docket No. 49 at 8. Mr. Sgaggio cites caselaw which supports the proposition that voluntary encounters turn into detention when an officer retains possession of a citizen's identification. *Id.* The amended complaint's allegation regarding Mr. Sgaggio's ID states "[o]n Nov. 15, 2023 Defendant J. Randall Made Delbert Sgaggio sign in and

15

identify and also took Mr. Sgaggio's Id so that Mr. Sgaggio could access the D.A.'s office."  Docket No. 22 at 14, ¶ 48.  This is the only allegation relating to a November 15, 2023 encounter.  *See generally id.*

While the recommendation did not consider this allegation when analyzing Claim Five, *see* Docket No. 48 at 19-20, it did so when analyzing Claim Two.  *Id.* at 17.  The recommendation finds that "[t]he allegation is a single sentence and the Court finds it far too underdeveloped to survive a motion to dismiss."  *Id.*  The Court agrees.  The amended complaint provides no context regarding the November 15, 2023 encounter and the sole allegation on the matter does not state that defendant Randall retained possession of Mr. Sgaggio's ID or that Mr. Sgaggio did not voluntarily hand over his ID. Therefore, it does not plausibly state a Fourth Amendment claim based on the seizure of Mr. Sgaggio's ID, and the Court will overrule this objection.

### b.  Administrative Search and Special Needs Exception

Mr. Sgaggio argues that the recommendation misapplies the "administrative search" or "special needs" exception.  Docket No. 49 at 10.  In support, Mr. Sgaggio claims that caselaw supports the proposition that there is a requirement for "pre compliance review before a neutral decision maker" under the administrative search exception.  *Id.* at 11.  As explained above, however, the Fourth Amendment is not implicated by Mr. Sgaggio voluntarily signing the logbook.  Accordingly, it is unnecessary to determine whether an exception to the Fourth Amendment applies, and the Court will overrule Mr. Sgaggio's objection.

### c.  Improper Standard

Finally, Mr. Sgaggio argues that the recommendation resolved factual disputes against him when analyzing Claim Five.  Docket No. 49 at 13.  In support, Mr. Sgaggio

points to where the recommendation determines that the logbook policy is a reasonable security protocol and that the balance of interests renders the policy a reasonable condition of entry under the Fourth Amendment. *Id.* at 14. The recommendation comes to these conclusions when analyzing whether Fourth Amendment exceptions apply. Docket No. 48 at 19-20.

Contrary to Mr. Sgaggio's assertion, these findings do not resolve a factual dispute. Like with Mr. Sgaggio's objection regarding Claim Two, the recommendation is simply applying the allegations in the amended complaint relating to the logbook policy to the applicable law. It is not resolving any factual disputes between the two parties. Thus, the Court will overrule Mr. Sgaggio's objection.

### C. Non-Objected to Portions of the Recommendation

The Court has reviewed the rest of the recommendation to satisfy itself that there are "no clear error[s] on the face of the record." *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes. Based on this review, the Court has concluded that the recommendation is a correct application of the facts and the law.

### IV. CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 48] is **ACCEPTED in part** and **REJECTED in part**. It is further

**ORDERED** that El Paso County Defendants' Objection to Recommendation of United States Magistrate Judge [Docket No. 52] is **SUSTAINED**. It is further

**ORDERED** that Mr. Sgaggio's Objection to Recommendation of United States Magistrate Judge [Docket No. 49] is **OVERRULED**. It is further

**ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 31] is **GRANTED**. It is further

**ORDERED** that Delbert Elmer Sgaggio, Jr.'s claims for relief are **DISMISSED with prejudice**. It is further

**ORDERED** that, on or before **April 24, 2026**, Jerome Freeman shall show cause why this case should not be dismissed against him in light of the Court's order.

DATED March 31, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge